BRADLEY, Judge.
This case involves an appeal from five final assessments entered by the State through the Alabama Department of Revenue against Morrison Food Service of Alabama (Morrison).
The State made final assessments of sales and use taxes against Morrison in the amount of $165,464.90. The State based its assessments on Morrison’s withdrawal of food from its inventory to fulfill contractual obligations. On July 5, 1979 Morrison filed a notice of appeal in the circuit court seeking to have these assessments set aside.
The State filed a motion for summary judgment alleging that it was entitled to a judgment as a matter of law based on our decision in ARA Hospital Food Management, Inc. v. State of Alabama, 437 So.2d 530 (Ala.Civ.App.1983). The trial court then entered a final judgment granting the State’s motion for summary judgment and upholding the State’s final assessments against Morrison. Morrison appeals.
On appeal Morrison contends (1) that section 40-23-l(a)(10), Code 1975, mandates reversal of the trial court’s order; (2) that ARA Hospital Food Management, Inc. v. State, supra, should be overruled; (3) that the facts of the present case are distinguishable from the facts in ARA Hospital Food Management, Inc. v. State, supra; (4) that department of revenue regulations require reversal of the trial court.
The record reveals the following facts. Morrison, during the taxable period at issue, October 1,1975 through June 30, 1978, entered into several (nine) contracts whereby it agreed to operate food service programs for a number of institutions, including hospitals, nursing homes, and fraternities. The contracts are very similar to each other. Morrison agreed in the contracts to provide food to the institutions, which food was purchased by Morrison in its own name, and to provide supervisory personnel to operate the institutions’ food service programs. Morrison’s customers agreed to provide the kitchen facilities, equipment and nonsupervisory personnel. Morrison was reimbursed by its customers for its out-of-pocket expenses (food cost, supervising, personnel, salary) and received a management fee.
The State argued that these contracts were similar to the contracts in ARA Hospital Food Management, Inc. v. State, supra. In that case ARA entered into two food service agreements with two hospitals. Pursuant to these agreements, ARA managed and supervised the hospital’s dietary department. ARA was responsible for all direct costs of operation, including food and labor. ARA also prepared the food and was compensated on a cost-plus basis. ARA was withdrawing food previously purchased at wholesale from its inventory in performance of its contracts. The State assessed sales tax on the withdrawn materials on the basis of section 40-23-l(a)(10), Code 1975 (Supp.1982). This section reads in part as follows:
“The term ‘sale at retail’ or ‘retail sale’ shall also mean and include the withdrawal, use or consumption of any tangible personal property by anyone who purchases same at wholesale, except property which has been previously withdrawn from the business or stock and so used or consumed and with respect to which property the tax has been paid because of such previous withdrawal, use or consumption, and except • property which enters into and becomes an ingredient or component part of tangible personal property or products manufactured or compounded for sale and not for the personal and private use or consumption of any person so withdrawing, using or consuming the same; and such wholesale purchaser shall report and pay the taxes thereon.”
We found that ARA was providing a service to the hospitals rather than selling food. We thus concluded that these withdrawals constituted a retail sale under the withdrawal provision of section 40-23-l(a)(10), Code 1975, and that ARA was required to pay a tax thereon.
The State thus argues that since the facts in ARA Hospital Food Management, *134 Inc. v. State, supra, are similar to the facts in the case before us the same result should obtain, i.e. Morrison should be liable for the sales tax. Morrison contends, however, that ARA Hospital Food Management, Inc. v. State, supra, should be overruled in light of Ex parte Disco Aluminum Products Co., 455 So.2d 849 (Ala.1984), and the new amendment to section 40-23-1(a)(10). See Act No. 83-720, 1983 Ala.Acts 1167.
We recognize that our decision in ARA Hospital Food Management, Inc. v. State, supra, was principally supported by Alabama Precast Products, Inc. v. Boswell, 357 So.2d 981 (Ala.Civ.App.1977), affd, 357 So.2d 985 (Ala.1978). In this case Precast had entered into a contract to furnish and install roof slabs that it manufactured specifically for a building. Precast manufactured the roof slabs with raw materials withdrawn from its own inventory purchased at wholesale. Precast provided the labor and equipment necessary to install the slabs in addition to the slabs themselves. The State assessed sales tax on the withdrawn raw materials on the basis of section 40-23-l(a)(10), Code 1975.
The supreme court held that:
“The raw materials withdrawn from the inventory of [Precast] therefore became ingredients or component parts of tangible personal property used by [Precast] in the performance of a personal obligation under the construction subcontract. Thus the transaction qualified as a taxable ‘retail sale’ .... [Precast] was the ultimate consumer of the raw materials and as such was liable for the tax thereon.”
Alabama Precast Products, Inc. v. Boswell, supra (emphasis in the original).
After Alabama Precast Products, Inc. v. Boswell, supra, the legislature passed an amendment to the withdrawal provision in section 40-23-l(a)(10). Act No. 83-720, 1983 Ala.Act 1167. This section is now amended to read:
“The term ‘sale at retail’ or ‘retail sale' shall also mean and include the withdrawal, use or consumption of any tangible personal property previously purchased at wholesale by a person engaged in the business of selling at retail tangible personal property from the business or stock for the personal and private use or consumption, without transfer of title, in connection with the business or by the person so withdrawing, using or consuming the same, except property which has been previously withdrawn from the business or stock and so used or consumed and with respect to which property tax has been paid because of such previous withdrawal, use or consumption, and except property which enters into and becomes an ingredient or component part of tangible personal property or products manufactured, fabricated or compounded for sale_”
§ 40-23-l(a)(10), Code 1975 (Supp.1984).
The supreme court in Ex parte Disco Aluminum Products, Co. v. State, supra, stated that the legislature in passing this amendment signaled its disapproval of the interpretation of the withdrawal for use provision in Alabama Precast Products, Inc. v. Boswell, supra. The court concluded that cases which had applied the withdrawal provision to manufacturers or wholesale purchasers who transferred title to their goods to others and that established the “concept that the requirement that withdrawals must be for ‘personal and private use’ included the ‘personal obligation’ of a ‘furnish and install’ contract” were no longer the law.
We therefore cannot consider Alabama Precast Products, Inc. v. Boswell, supra, controlling on the issue before us. We also do not consider ARA Hospital Food Management, Inc. v. State, supra, controlling to the extent that we relied on Precast, although this case is still helpful in our determination of whether a retail sale occurred, as will be shown below.
Instead, we turn to a case decided recently by this court and subsequent to the passage of the amendment to section 40-23-l(a)(10). In this case, White, Commissioner v. Campbell & Associates, Inc., 473 So.2d 1071 (Ala.Civ.App.1985), the State *135 sought to impose a sales tax under the withdrawal provision, § 40-23-l(a)(10), Code 1975 (Supp.1984), on materials used by Campbell in its rubberlining process. The State imposed the tax on rubber lining materials that Campbell withdrew from inventory to rubber line pipes that belonged to others. The State did not attempt to tax withdrawals of rubber lining materials which were used to rubber line pipes manufactured by Campbell and then sold. We stated that “the title to the materials consumed is not transferred or sold. What Campbell sells to its customers that give it objects to rubberline is not a ‘manufactured’ rubber lining. It sells its capability to produce and apply the rubber lining.” Likewise, Morrison sells to its customers its ability to purchase large volumes of food at a discount and its expertise in preparing tasteful meals for large groups of people. Title to Morrison’s raw materials is not transferred or sold; rather it is compounded under Morrison’s supervision into meals and then served to its customer’s patients or members.
As we stated in White, Commissioner v. Campbell & Associates, Inc., supra, in order for a taxpayer to escape the application of the withdrawal provision of § 40-23-l(a)(10), Code 1975, he must fit into either of two exceptions. These exceptions are in part as follows: Personal property withdrawn for personal use is subject to retail sales tax, “[1] except property which has been previously withdrawn from the business or stock and so used or consumed and with respect to which property the tax has been paid because of such previous withdrawal, usé or consumption, and [2] except property which enters into and becomes an ingredient or component part of tangible personal property or products manufactured, fabricated or compounded for sale.”
The first exception is not applicable. Morrison cannot argue that title was transferred or sold after its raw materials were compounded into meals and then served to its customer's patients. In ARA Hospital Food Management, Inc. v. State, supra, we stated “[t]he hospitals purchased no tangible personal property; they purchased a service. As the trial court correctly found: ‘Here, the contractor has undertaken the [hospital’s] responsibility to provide patient food service and stands in the shoes of the [hospitals] ... as the consumer of the food and not as a seller of .meals.”
In the case before us, Morrison bore most of the direct costs of the operation of the food service programs. Morrison agreed to supervise the preparation of meals and provide the services of a dietitian, and a menu plan. Morrison contracted to operate its customer’s food service program, and thereby stood in the shoes of its customers as the user or consumer of the food and not as a seller of meals. Morrison’s withdrawal of food from inventory was not a sale, but instead was incidental to rendering a service to its customers. Hamm v. Boeing Co., 283 Ala. 653, 220 So.2d 257 (1969). The raw materials alone were of little value to Morrison’s customers without Morrison’s guidance in the preparation of the meals.
Morrison cites several department of revenue regulations in an effort to support its position that it should not be taxed for its withdrawal of materials from inventory; one such regulation is as follows:
“Services not necessarily or customarily performed incidental to the sale of property or services unusual in nature and for which a separate and additional charge is made are not to be included in the gross proceeds of sales.”
Alabama Department of Revenue Rule 810-6-1-.84, Administrative Code, 1985. Morrison argues that merely because it performed some services under its contracts, this alone does not turn its “retail sale” into a “self-consuming retail sale.” Here, we have concluded that Morrison did not sell any property; that it instead sold its ability to provide its customers with well-prepared and inexpensive meals. Thus, this regulation has no application to the case before us. Other regulations relied on by Morrison are also inapplicable.
We therefore conclude that Morrison’s withdrawal of raw materials from in *136 ventory constitutes a taxable withdrawal under section 40-23-l(a)(10). We affirm the judgment of the trial court ordering that the assessments be paid. We do not discuss other issues raised by the State, considering such a discussion unnecessary to the resolution of this case.
AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.